GREER, Respondent v. CITY OF LENNOX, Appellant

(107 N.W.2d 337)

(File No. 9868. Opinion filed February 2, 1961)

**Bogue & Rudolph, Carl K. Anderson,** Canton, for Defendant and Appellant.

**Samuel W. Masten,** Canton, for Plaintiff and Respondent.

HANSON, J. This is an action for damages against the City of Lennox for operating a public dump in such manner as to constitute a nuisance. The City appeals from an adverse verdict and judgment in the amount of $5,000.

The plaintiff, John Greer, owns a farm located two miles south of Lennox upon which he resides with his wife, infant daughter, and stepson. The farm is improved with a dwelling house, barn, garage, granary, corncrib, chicken house, cob shed, and two hog sheds. The buildings are situated at the end of a driveway about 35 rods south of an east-west traveled township road.

In 1953 the City of Lennox purchased a gravel pit for use as a public dump. It is located on land immediately north of plaintiff's farm. The driveway to the dump runs north off the township road about 50 rods west of plaintiff's drive-

way. In April 1954 the City closed its old dump north of town and commenced using the gravel pit as a public dump for the disposal of refuse and garbage. This refuse and garbage was collected daily by a city employee from residents of Lennox. All matter of waste, refuse, and offal were dumped by the City and others at the site—dead chickens and animals, rotten eggs, raw garbage, spoiled meat, rotten fruit, and contents of cesspools. Inflammable materials were burned "every day it was fit" and twice a year a bulldozer was used to shove the refuse down. Also the City commenced poisoning rats shortly after the dump was opened.

Before the dump was established plaintiff's premises were in good repair and free from rats and offensive odors. Afterwards, his farm was infested with rats, flies, and noxious odors. The rats were particularly bothersome and destructive. They undermined foundations causing them to sag and break. They damaged sills, floors, lower siding boards, and door frames. They caused fear and inconvenience and prohibited the use of the basement in the house. Plaintiff incurred expense in fighting the rats, repairing damaged buildings, and fanning grain. He sustained loss of crops, chickens, feed grain, and loss of value in his buildings.

The City was aware of the condition. Complaints were made by plaintiff. The matter was discussed at meetings of the City Council. It was the subject of local newspaper comment. The mayor and various city officials inspected the damage to plaintiff's property. On one occasion the City furnished a supply of rat poison to plaintiff. In 1958 it retained the services of an expert exterminator. Nevertheless, up to the time of trial in November, 1959 the rats continued to invade and infest plaintiff's premises.

The record sustains the conclusion that the manner in which the defendant City maintained and operated its public dump constituted a "nuisance" as defined in SDC 37.4701 to consist of "unlawfully doing an act, or omitting to perform a duty, which act or omission either:

"(1) Annoys, injures, or endangers the comfort, repose, health, or safety of others;

"(2) Offends decency;

*      *      *      *      *      *      *

"(4) In any way renders other persons insecure in life, or in the use of property."

The question of governmental immunity is the basic issue preserved and presented for our review. In this respect, the City contends the creation and operation of a public dump is a governmental function; that plaintiff's action, in effect, is based upon negligent care of its dump and, according to well-settled law, the City is immune from liability for damages negligently created or caused while engaged in such governmental activity.

The courts differ as to whether the creation and maintenance of a public dump by a municipality is a governmental or proprietary function. 38 Am.Jur., Municipal Corporation, § 614, page 311, 153 A.L.R. 716. The distinction is important in an action for damages against a municipality based upon negligent conduct of its officers and employees in the performance of a governmental function in which case the municipality is immune from liability. Bucholz v. City of Sioux Falls, 77 S.D. 322, 91 N.W.2d 606. The distinction between governmental and proprietary functions fades into insignificance, however, in an action against a municipality for maintaining a nuisance as, in either event, governmental immunity does not extend to the creation or maintenance of such an improper or unlawful condition. 52 A.L.R.2d 1136.

A public dump is not a nuisance per se as municipalities are expressly authorized by statute "to collect and dispose of and regulate the manner of handling of garbage and other waste material and for such purpose to acquire, establish, maintain, operate and regulate equipment and garbage disposal plants, incinerators and dumping grounds and to fix and collect charges for such services, and to contract with one or more persons for the collection and hauling

of garbage and other waste material from the municipality or districts established therein." SDC 1960 Supp. 45.0201-1(21). This statute, however, does not authorize or sanction the operation of public dumps in such manner as to injure private rights and an offending municipality may be enjoined from such use or held responsible in damages therefor. Parsons v. City of Sioux Falls, 65 S.D. 145, 272 N.W. 288.

Although the City of Lennox had legislative authority to create and maintain a public dump its authority "was limited by the duty resting upon the city to exercise its authority in a reasonable manner and to take all reasonable precautions against damaging private property." Messer v. City of Dickinson, 71 N.D. 568, 3 N.W.2d 241, 246. When a city fails to perform that duty its public dump may become a private nuisance, unprotected by governmental immunity.

■ In the sense used here a nuisance is a condition which substantially invades and unreasonably interferes with another's use, possession, or enjoyment of his land. It may be intentionally or unintentionally created. Kinnischtzke v. City of Glen Ullin, 79 N.D. 495, 57 N.W.2d 588; § 822 Restatement of the Law of Torts; Gellert v. City of Madison, 50 S.D. 559, 210 N.W. 978. "As a general rule, negligence is not involved in nuisance actions or proceedings, and is not essential to the cause of action. If a particular use of property causes a nuisance, this fact is itself sufficient to entitle a person injured thereby to relief. If a nuisance exists, the facts that due care was exercised and due precautions were taken against the annoyance or injury complained of are immaterial; and the fact that defendant has used the ordinary means to avoid the nuisance complained of which are used in general by others engaged in the same business is no defense. In fact, a nuisance may be created or maintained with the best or highest degree of care * * *." 66 C.J.S. Nuisances § 11, p. 753.

■■ To create liability for a private nuisance it must cause substantial harm. In other words it must substantially and unreasonably invade or interfere with another's

use and enjoyment of his property. When the nuisance is temporary the ordinary measure of damages is the loss of rental or use value of the premises for the duration of the nuisance. When permanent, it is the permanent diminution in value of the property. In addition, "the value of any personal discomfort or inconvenience which the plaintiff has suffered, or of any injury to health or other personal injury sustained by the plaintiff, or by members of his family so far as they affect his own enjoyment of the premises, as well as any reasonable expenses which he has incurred on account of the nuisance." Prosser on Torts 2d Ed. page 417; Parsons v. City of Sioux Falls, 65 S.D. 145, 272 N.W. 288. When damages are sought for personal annoyance, discomfort, or inconvenience it is not measured by the annoyance, discomfort, or inconvenience of a particular plaintiff but the standard is whether such interference would offend, discomfort, or annoy the normal person of ordinary taste and sensibilities in the community. Johnson v. Drysdale, 66 S.D. 436, 285 N.W. 301.

Finding no error in the ruling of the trial court the judgment appealed from is affirmed.

All the Judges concur.