SHIPLEY et ux, Respondents v. CITY OF SPEARFISH,
Appellant

(235 N.W.2d 911)

(File No. 11544. Opinion filed December 5, 1975)

Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell, Rapid City, for defendant and appellant.

Dale R. Hansen, Morrill & Hansen, Sturgis, for plaintiffs and respondents.

WINANS, Justice.

On December 18, 1972, Darrell and Katherine Shipley, husband and wife, were the owners of a single story residence with a finished basement situated in the City of Spearfish. On that day the sewer line to which their home was connected backed up through the floor drains in the washroom and in the shower, both in the basement, and throughout the basement area deposited raw sewage which was reported to be ankle high. The Shipleys' troubles appear to have begun on the 15th of December when they noticed slower-than-usual draining in their plumbing but it was not until the morning of the 18th that they decided to take action. After they were unable to obtain the services of private plumbers and after they had determined that the cause of their mounting difficulties might be in the main sewer line they contacted the City of Spearfish. The City responded promptly and shortly after one that afternoon it had a crew on the job. It appears that up to that time there was no sewage backup in the basement. Shortly after their arrival the workers from the city inserted a rodder into a nearby manhole in the main sewer and soon removed the debris which caused the blockage. It consisted of a stick about an inch and a half or two inches by fourteen or eighteen inches, some plastic-lined disposable diapers, some rags and other unidentified objects. Mr. Shipley was not at home at this time, but Mrs. Shipley was. During the rodding operation she smelled the strong odor of sewer gas and quickly removed the children who were playing in the house. She returned within minutes and was confronted with the sewage seeping into her finished basement whereupon she told the work crew what was happening and asked them to come down and inspect it. Her testimony is that they did not respond to her entreaty but kept on working at the manhole and only once approached the house. A workman stood outside the door and called through it to Mrs. Shipley who was hard at work with a neighbor cleaning up the raw sewage in the basement. The workman asked if the sewer

had stopped backing up and when Mrs. Shipley said that it had the workman went away. It took many days and much hard work to clean the basement and to repair the damage. The Shipleys appeared at a city council meeting and asked that the City· of Spearfish reimburse them for their loss. When they refused the Shipleys brought an action in which they alleged, according to their amended complaint, that the City was "careless and negligent in the operation of its sewer system," that the City had created a private nuisance and that "the sewer material that backed up in the plaintiffs (sic) home on December 18, 1972, was through the sewer system which is wholly controlled by the defendant and that the occurrence pled would· not have occurred other than in the absence of ordinary· care on the part of the defendant, wherefore plaintiffs were damaged as heretofore shown, it being the intent of the pleader in this count to invoked (sic) the doctrine of res ipsa loquitur."

A jury trial was held and on July 30, 1974, a verdict for the Plaintiffs was returned in the amount of $4627.68. From that verdict the City of Spearfish appeals charging that the trial court erred in allowing the pleading of and giving the instruction on the res ipsa loquitur doctrine, in refusing Defendant's offer of proof regarding an independent contractor's work in the area, in giving certain other instructions and in denying a defense motion to strike the request for damages for private nuisance. Because we find that the trial court. was in error in giving the res ipsa instruction to the jury and the case is therefore reversed and remanded, we need discuss only that issue.

This Court has held that the res ipsa loquitur doctrine is primarily a rule of Evidence. *Roster v. Inter-State Power Co.*, 1931, 58 S.D. 521, 237 N.W. 738. It is not an issue to be pleaded in the complaint nor need it be "noticed" by specific designation to the adverse party at pretrial or at trial for it is neither a cause of action nor a ground for recovery. *Fassbinder v. Pennsylvania Railroad Company*, 1963, 3 Cir., 322 F.2d 859. It should also be noted that the res ipsa loquitur doctrine, since it is a rule of necessity, ought to be invoked sparingly, and only when the facts and demands of justice make its' application essential. *Barger v. Chelpon*, 1932, 60 S.D. 66, 243 N.W. 97. In this state the essential elements which must be present in order to invoke res

ipsa loquitur are set out in *Kramer v. Sioux Transit, Inc.*, 1970, 85 S.D. 232, 180 N.W.2d 468. There it is stated that

"the instrumentality which caused an injury must have been under the full management and control of the defendant or his servants; that the accident was such that according to common knowledge and experience does not happen if those having management or control had not been negligent; and that plaintiff's injury must have resulted from the accident."

In giving the Instruction #13 to the jury on res ipsa the trial court was allowing the jury to decide whether or not "the sewer by which damage to the Plaintiff was proximately caused, was in the possession or under the exclusive control of the Defendant at all times material to this action." In view of the case law on the subject and the testimony in the record an affirmative finding on the question would have been entirely unsupported. The trial record is clear that Defendant's sewer system is not under its exclusive control. It is easily accessible. Any homeowner whose own plumbing feeds into it thereby has access to it. A passerby can gain access through unsecured manholes in the public streets and on Halloween and at other times, the record shows, manhole covers have been removed and the manholes left open. *Freitag v. City of Montello*, 1967, 36 Wis.2d 409, 153 N.W.2d 505, was an action for damage due to a backup of sewage into a basement. There the Wisconsin Supreme Court held that the obstructed sewer main was not an instrument entirely within the control of the city with respect to the materials deposited in it. The Court said:

"It is one thing for a municipality to be able to control what is dumped into a sewer as industrial waste by a particular industry, when such waste has characteristics peculiar to itself which can be identified if found in the flow of sewer mains. It is another thing for a municipality to be able to control the deposit of plastic bags, toys, or fish heads, which, when found in a sewer main, cannot be traced back to the depositor. We deem the right of control in the latter instance, because of its difficulty of enforcement, to be more theoretical than

actual. The right to control is of no consequence, unless it can be effectively exercised."

*Long v. Spanish Lake Service, Inc.,* 1974, Mo.App., 507 S.W.2d 935, is another case dealing with a sewer backup into a residence. There the plaintiff argued res ipsa loquitur and on appeal the Missouri Court of Appeals found it inapposite for two reasons: (1) "By its very nature defendant's sewer was available to all persons with access to the line—for their proper or improper use—without defendant's prior control," and (2) "[n]either common knowledge nor experience leads us to conclude plaintiffs' sewer would not have overflowed but for defendant's negligence in some form." For those same two reasons we find that the doctrine of res ipsa loquitur was not appropriate in this case and that the giving of Instruction # 13 to the jury by the trial judge was prejudicial error. The Plaintiffs have shown neither the requisite control nor the probability essential to a res ipsa case and the Defendant has consequently been subjected to an unwarranted burden.

Reversed.

DUNN, C. J., and DOYLE, J., concur.

WOLLMAN and COLER, JJ., dissent.

WOLLMAN, Justice (dissenting).

I am persuaded that the trial court did not err in giving the res ipsa loquitur instruction.

Had the obstruction been caused by some form of sewage or a foreign object that could have been carried into the main sewer line from the home owners' lateral lines, then the res ipsa instruction would not have been justified. *Freitag v. City of Montello*, 36 Wis.2d 409, 153 N.W.2d 505. However, the only logical inference to be drawn from the evidence is that the obstruction was caused by the stick that somehow found its way into the sewer line. The likelihood that the stick got into the sewer line from one of the lateral lines leading from one of the homes is so remote that we can only assume that it entered through an open manhole. The manholes were within the

exclusive control of the city in the sense that the city was under an obligation to take reasonable steps to insure that foreign objects were not deposited within the sewer, either deliberately or accidentally.

COLER, Justice (dissenting).

I agree with Justice Wollman that the res ipsa loquitur instruction was properly submitted to the jury.

The majority opinion fails to take into account that, under the amended complaint, respondents sought $1,127.68 for specific damages under Counts I and III and an additional $5,000 for compensatory damages on the grounds of a private nuisance, Count II. These three theories were submitted under the instructions and the jury returned a general verdict for $4,627.68. A reversal on the basis of the res ipsa loquitur pleading and instruction does not dispose of at least $3,500 of the verdict which apparently was awarded as compensation for the private nuisance.

I believe there is a legitimate question of whether respondents could proceed both on the theory of negligence and on private nuisance. Negligence is not necessarily involved in the nuisance action, *Greer v. City of Lennox,* 1961, 79 S.D. 28, 107 N.W.2d 337, but the facts in this case disclose that it was not a problem of design or continuing neglect of the system but a one-time accident arising out of possible negligence on the part of the city which brought about the damages sought. SDCL 21-10 contemplates the enjoining of a continuing nuisance and SDCL 21-10-9 authorizes damages for the duration of the nuisance. Appellant did challenge the right of respondents to maintain the action but only concentrated in its brief upon the necessity to prove special damages.

"[M]ental suffering may be recovered for, if it is the direct, proximate, and natural result of, the wrongful act." *Coty v. Baughman,* 1926, 50 S.D. 372, 210 N.W. 348, 48 A.L.R. 1205. I believe that, unless that part of the verdict is affirmed on this basis, we must deal with the questions of improper joinder of causes of action, SDCL 15-6-18, or election of remedies. The error, if any existed, was not prejudicial in that damages for

mental anguish were properly awarded under Counts I and III by reason of *Coty v. Baughman,* supra.

The majority opinion cites, *Fassbinder v. Pennsylvania Railroad Company,* 1963, 3 Cir., 322 F.2d 859. The language quoted from that case says essentially the same thing that this court has said, though not expressly in that language, in *Barger v. Chelpon,* 1932, 60 S.D. 66, 243 N.W. 97. *Orrison v. City of Rapid City,* 1956, 76 S.D. 145, 74 N.W.2d 489; *Henrichs v. Inter City Bus Lines,* 1961, 79 S.D. 267, 111 N.W.2d 327; *Anderson v. Chicago & N. W. Ry. Co.,* 1932, 59 S.D. 543, 241 N.W. 516 and *Wheeler v. Corner d/b/a LaFemme,* 1969, 84 S.D. 287, 170 N.W.2d 883. These decisions stand for the proposition that it is not necessary to allege res ipsa loquitur in the pleadings. The only requirement is that the essential elements necessary for the application of the doctrine be established by the evidence. None of these cases state that it is improper to plead the doctrine. Rather, the thrust of our decisions is that the doctrine is available if the evidence warrants its application but failure to plead it does not waive the benefits of the doctrine where evidence supports the jury's application of the doctrine. *Barger v. Chelpon,* supra; *Wheeler v. Corner,* supra.

Certainly, the submission of the res ipsa loquitur instruction (South Dakota Civil Pattern Jury Instruction 22.01), under proper circumstances, is the accepted practice in our state and nothing in our decisions states that it is improper for the trial court to submit the issue to a jury. 65A C.J.S. Negligence § 282.

I perceive no harm in specific pleading of res ipsa loquitur. The purpose to be served by such pleading, as pointed out by Judge McLaughlin in his dissent in *Fassbinder v. Pennsylvania Railroad Company,* supra, is that defendant is thereby afforded an opportunity to refute the charge of exclusive control and the other elements necessary to establish the application of the res ipsa loquitur doctrine.

The parties did not request either special verdict under SDCL 15-6-49(a) or written interrogatories under SDCL 15-6-49(b). The submission of either is at the discretion of the trial court under Rules 49(a) and 49(b) but it could have been done on

the trial court's initiative and for purposes of review the trial court probably should have done so. 6 A.L.R.3d 438, § 2 at 442 et seq.

This court has considered the doctrine of res ipsa loquitur and its application on many occasions and a good many of those cases are cited in the South Dakota Civil Pattern Jury Instructions 22.00 and 22.01. If the jury had not been instructed, this court, under our own precedent, should extend the courtesy to the successful plaintiffs to determine whether or not there was sufficient evidence for the jury to have found the city negligent as did this court in *McLinn v. Noll*, 1937, 65 S.D. 440, 274 N.W. 833. See also *Schmeling v. Jorgensen*, 1957, 77 S.D. 8, 84 N.W.2d 558. Even if the pleading improperly joined theories of negligence and the instruction on res ipsa loquitur was unwarranted, how can we say, under the circumstances, that the jury did not agree that the award was proper under the claim of specific acts of negligence on the part of the city?

The basic duties of respondents and of appellant in relation to sanitary sewer connections are set forth in *Shann v. City of Rapid City*, 1948, 72 S.D. 418, 35 N.W.2d 399:

"the city should not be held absolutely liable as a trespasser should water back up on plaintiff's property through the drain which plaintiff had installed, however, the fact that plaintiff has voluntarily connected her premises with the sewer is no bar to her recovery for damage caused by the set back of water and sewage if such set back is caused by the negligence of the city."

I further submit that although someone other than the parties may have accidentally or deliberately placed the stick in that manhole or some other manhole

"a municipality is liable for damages from an accident the result of two concurrent causes, though one of them is a cause over which the municipality has no control, providing, however, it is a cause which it should have anticipated and have guarded against." *Smith v. City of Yankton*, 1909, 23 S.D. 352, 121 N.W. 848.

Under the evidence adduced and based on the instructions given, the jury may well have found for plaintiffs on the theory of negligence alleged in Count I of the amended complaint by concluding that the city failed to properly supervise the contractor in securing openings to manholes during the course of construction.

I would affirm the judgment.